IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA and SCOTT CAVE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAXON MORTGAGE SERVICES, INC.,<br><br>Defendant. | Civ. A. No. 11-4586 |
| WILLIAM D. CAVE, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAXON MORTGAGE SERVICES, INC.,<br><br>Defendant. | Civ. A. No. 12-5366 |

<u>**MEMORANDUM**</u>

**Padova, J.**                                                            **February 8, 2017**

I.      **INTRODUCTION**

        The class certification motions of Plaintiffs Lisa and Scott Cave in Civil Action Number

11-4586 and Plaintiff William D. Cave in Civil Action Number 12-5366 were denied in an

Opinion dated October 11, 2016.  (<u>See</u> Docket Entry 191 ("Class Cert. Opinion").[1])   William D.

_____

        [1] Unless otherwise noted, all Docket Entry references are to Civil Action Number 12-5366.   Because the parties are well familiar with the prior proceedings, submissions and decisions in these cases, we set out only the elements of the record necessary to the discussion of the pending Motion.

Cave ("Cave") now moves for reconsideration of that decision. He argues that we erred in concluding that he could not meet the predominance element of Fed. R. Civ. P. 23(b). He also argues that we erred in finding that he was an atypical and inadequate representative for the class under Rule 23(a). As there was no manifest error in our predominance determination that the putative class members' eligibility for a permanent Home Affordable Modification Program ("HAMP") modification was an individual determination that could not be shown through common evidence or in our finding that Cave's individual situation made him atypical of the Class he sought to represent, there is no cause to reconsider our decision.

## II.    LEGAL STANDARD

'"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence."' Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 251 (3d Cir. 2010) (quoting Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985))). A proper motion for reconsideration under Fed. R. Civ. P. 59(e) '"must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."' Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (quotation omitted)). "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995). It is improper on a motion for reconsideration to ask the Court to '"rethink what it had already thought through — rightly or wrongly.'" In re Blood Reagents Antitrust Litig., 756 F. Supp. 2d 637, 640 (E.D. Pa. 2010) (quoting Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)).

Therefore, "[m]ere dissatisfaction with the Court's ruling . . . is not a proper basis for reconsideration." Progressive Cas. Ins. Co. v. PNC Bank, N.A., 73 F. Supp. 2d 485, 487 (E.D. Pa. 1999).

## III.   THE PREDOMINANCE ISSUE

Cave argues that we made an error of law when we determined that the question of whether class members had satisfied the two conditions precedent to receive a permanent modification could not be shown using evidence that was common to the class.  (Class Cert. Opinion at 41.)  In making this argument he does not contest that these conditions precedent were applicable to class members' entitlement to receive a permanent modification, but he argues that we "did not consider which party is contractually obligated to verify the truth and accuracy of the borrower's financial information."   (Docket Entry 195, Pl. Mem. in Support of Mot. for Reconsideration ("Pl. Mem.") at 8.)  He argues that under Section 2.F of the Temporary Payment Plan agreement ("TPP"), Saxon was obligated to verify by his Modification Effective Date ("MED") that his prior verbal representations remained true and accurate during the trial period. Cave contends that "the Court has improperly shifted this verification obligation to the borrower and also ignored Saxon's obligation to provide written notice by the MED if the borrower did not qualify."  (Id. at 8-9.)

This argument provides no basis to reconsider our decision.  First, the TPP language from which the Class claim flows is not only Section 2F, but also from the first sentence of the TPP, as reiterated later in Section 3.  These provisions set out the two conditions precedent that a borrower was required to satisfy to receive a permanent modification after the completion of his trial period:  (1) making each trial period payment in full and on time, and (2) the continued validity of financial information the borrower orally submitted when initially applying for the TPP.  (See

TPP (Pl. Ex. 22 ("**If** I am in compliance with this [TPP] **and** my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a [Modification Agreement] as set forth in Section 3 . . .")).) (emphases added).  In earlier decisions we held that an initial communication from Saxon that a borrower "qualified" for a TPP based on his verbal representations — in the form of countersigning the TPP and returning it to the borrower — made that agreement a binding contract, but that a permanent modification provided by Saxon was explicitly subject to these two conditions precedent.  (See Cave v. Saxon Mortg. Servs., Inc., Civ. A. No. 11-4586, 2016 WL 4203864, at *2 (E.D. Pa. Mar. 4, 2016) ("March 2016 Opinion") (quoting Cave v. Saxon Mortg. Servs., Inc., Civ. A. No. 11-4586, 2012 WL 1957588, at *5 (E.D. Pa. May 30, 2012) ("May 2012 Opinion") ("We therefore conclude that the TPP contains a clear promise that Saxon will provide Plaintiffs with a permanent modification if several conditions precedent are met.  However, it is clear that Saxon was only obligated to provide a permanent modification if Plaintiffs qualified."); March 2016 Opinion at *6 ("Saxon's countersigning the Cave II Plaintiff's TPP and returning it to the borrower formed a binding obligation so long as the two conditions precedent were satisfied. . . .")  Cave v. Saxon Mortg. Servs., Inc., Civ. A. No. 11-4586, 2015 WL 6153754, at *2, 4-5, 8 (E.D. Pa. Oct. 20, 2015) ("In deciding Saxon's earlier motions to dismiss the Cave I and Cave II complaints, we determined that the Plaintiffs had plausibly alleged breach of contract claims based upon the allegation that Saxon's countersigning a borrowers' TPP (1) constituted a determination that the borrower qualified for a HAMP modification, and (2) created a binding obligation to make the modification subject to two conditions precedent.").  The Class Cert. Opinion reaffirmed this ruling, stating that "to be 'actually eligible' for a permanent modification, each borrower had to satisfy [the same] two conditions precedent."  (Class Cert. Opinion at 41.)

We held that predominance was lacking because there was no way to determine from evidence that was common to the class whether a borrower's representations were in fact true in all material respects. Rather, an evaluation of the individual statements and submissions of each borrower was required to determine whether they satisfied the conditions precedent to a permanent modification. <u>Id.</u> ("Whether a borrower submitted accurate financial information and whether that information remained true during the course of the trial plan period requires evaluation of each borrower's verbal representations and their follow-up document submissions."). Cave's contention that we did not consider which party is contractually obligated to **verify** the truth and accuracy of the borrower's financial information, does not address the discrete focus of our predominance holding that each class member had the obligation to **submit** accurate information to satisfy the TPP's conditions precedent to recover on their claim, and that determining whether submitted information was accurate was incapable of being shown by common evidence.[2]

---

[2] To the extent that Cave bases his arguments on language contained in our prior <u>Daubert</u> opinions, we find there is no ground for reconsideration. One of the <u>Daubert</u> "fit" issues concerned the opinions expressed by Saxon's expert on the issue of whether the MED listed in a borrower's TPP was fixed or variable. In addressing this issue, we rejected the expert's reliance on extrinsic evidence to show the date was variable, stating that because "'it was incumbent upon Saxon under the terms of the signed TPP to issue a notice of denial within the time period specified' . . . [it] follows inescapably from our prior holding that, for the <u>Cave II</u> Class, a permanent modification would otherwise 'occur automatically upon the expiration of the three-month trial period.'" <u>Cave v. Saxon Mortg. Servs., Inc.</u>, Civ. A. No. 11-4586, 2016 WL 4203864, at *6 (E.D. Pa. Mar. 4, 2016) (quoting May 2013 Opinion, at *7 (quoting October Opinion, at *5 (emphasis omitted) and May 2012 Opinion at *5))). In so holding, we were not focused on the borrowers' satisfaction of the conditions precedent, but rather the consequences arising thereafter. We prefaced that discussion by noting that a binding obligation to provide a permanent modification arose "so long as the two conditions precedent were satisfied." <u>Id.</u>; <u>accord</u> <u>Cave v. Saxon Mortg. Servs., Inc.</u>, Civ. A. No. 12-5366, 2013 WL 1915660, at *7 (E.D. Pa. May 9, 2013) (stating that Saxon's "reading of Sections 2.F and 2.G is contrary to Saxon's clear obligation under the TPP to provide permanent modifications **if** Plaintiffs made all trial payments and their financial information continued to be true and accurate." (emphasis added).)

Cave also argues that we erred in concluding that "actual eligibility" for a HAMP modification was "a definitional element of the Class." (Pl. Mem. at 9 ("Moreover, the Court is incorrect in concluding that 'actual eligibility' for a HAMP modification is a definitional element of the Class").) He argues that he included the "did not receive a permanent modification" term in the proposed class definition "because that is one of the events that caused harm to Plaintiff and the Class members." (Id.) He asserts that in the absence of a timely eligibility determination by Saxon and provision of written notice to the borrower terminating the trial period, Saxon's voluntary countersignature of the TPP at the beginning of the HAMP process conclusively establishes the borrower's HAMP eligibility and no further common evidence of an individual borrower's purported "actual eligibility" for a permanent modification is required. (Id. at 10.)

Cave's assertion that we erred by "redefining" the proposed class is not cause to reconsider our decision. The Class proposed by William Cave included all borrowers in certain states whose loans had been serviced by Saxon and who, "during the period between April 2009 and October 2009: (i) entered into TPP Contracts with Saxon that are substantially similar to Plaintiff William Cave's TPP Contract and that Saxon counter-signed and returned to the borrowers, (ii) made all monthly payments as required by their respective TPP Contracts, (iii) and did not receive permanent Home Affordable Modifications by the Modification Effective Date set forth in their respective TPP Contracts." (Docket Entry 64, Cave II SAC at ¶ 94a.) Because of the conditions precedent, we concluded that the claim could not be shown by evidence that was common to the class:

> Whether a borrower submitted accurate financial information to Saxon is a condition precedent to receiving a permanent modification under the terms of the TPP and the HAMP regulations and, we find, is an individual issue not capable of proof with evidence that is common to the class. Plaintiffs have proposed a class definition for the Cave II Class that premises membership on eligibility for a HAMP modification — i.e., "not receiving a permanent modification" — but that

fails to incorporate both requirements for receiving a permanent modification. We find that this makes class treatment of the claim ultimately unworkable since common questions cannot predominate and individual issues concerning whether each member of the proposed class satisfied the eligibility requirements for a permanent modification overwhelms questions that are common to the class.

(Class Cert. Opinion at 41-42 (internal citation and footnote omitted).)

Based on this quoted language, Cave asserts that we concluded that actual eligibility was "a definitional element of the Class." (Pl. Mem. at 9.) This is inaccurate. We did not change the proposed Cave II Class definition. We held that the definition, as proposed, could not qualify for class treatment because it failed to incorporate the requirement set out in each member's TPP to "submit accurate financial information," which was a necessary element of the underlying claim that the Class would have to prove as part of its liability case. (Class Cert. Opinion at 41 ("To resolve this Rule 23(b)(3) predominance issue, we must first determine what Plaintiffs need to prove at trial to establish their claim, since it is the elements of the underlying legal claim — and not the class definition — which plaintiffs must demonstrate are "capable of proof at trial through evidence that is common to the class rather than individual to its members.") (citations omitted).) Since the Class had not shown that this element could be proven by evidence that was common to the class, we rejected the argument that common issues predominated. Since there was no error in our conclusion that borrowers had to meet these two conditions precedent to prove their breach of contract claim, we did not err in our conclusion that the Class had to demonstrate how it would show this by common evidence.[3]

---

[3] Alternatively, because the instant Motion repeats the argument Cave raised in his class certification submissions — and which we previously considered and rejected — he is not entitled to reconsideration. He argued in numerous submissions that the TPP required a permanent modification to **automatically** issue unless Saxon determined that he was ineligible by the MED. (See Docket Entry 104 at 45 (". . . Saxon countersigned the Cave II Class members' TPPs. Once Saxon countersigned the Class members' TPPs, it established that they did, in fact, qualify for modifications. Thus, the borrowers' submission of documents, verifications, and other obligations

Finally, even if Cave is correct that our discussion of the "submit accurate financial information" part of the predominance issue was erroneous, it would not alter our alternative reason for finding that common issues do not predominate.  We also based our predominance finding on the wholly separate problem of the Class's inability to show through common evidence that Saxon failed to meet its obligation to issue denials by the MED listed in each borrowers' TPP (see Class Cert. Opinion at 43).  While Cave relied on Saxon's 30(b)(6) witness testimony that Saxon did not issue any **written** denials until at least March 2010, we held that (1) the form of denial notice was not specified in the TPP, (2) the parties could agree to modify the length of the trial period, and (3) Saxon produced sufficient evidence from which a jury could conclude that it extended the trial periods for individual borrowers.[4]  (Id.)  Whether the parties agreed to extend the trial plans was also found to be an individual inquiry not capable of proof through common evidence.

---

aimed toward qualifying for the modifications, all become moot."); Docket Entry 90-1 at 37 (arguing that because Saxon admitted it did not issue any denials until after the latest possible MED for Cave II Class's TPPs, "Plaintiffs can establish Saxon's breach of the TPPs on a class-wide basis" based on that proof alone); Dkt. No. 181 at 12 ("Since Saxon's Rule 30(b)(6) witnesses have established that all members of the Cave II Class would have received TPPs countersigned by Saxon, and Saxon failed to issue any denials by the MED, there is no need for any individualized inquiries.").)

[4] While Cave characterizes this evidence in the instant Motion as Saxon "unilaterally instruct[ing] borrowers to continue making trial payments and [making] unending requests for more documents without giving homeowners like Mr. Cave any idea as to when they could expect a final eligibility decision" (Pl. Mem. at 17), we held that a jury could find that Saxon offered to extend borrowers' trial plans as provided in Treasury directives and that the offer could be accepted by way of a borrower continuing to make trial period payments, thereby further delaying or avoiding foreclosure or other default remedies.  (Class Cert. Opinion at 44-45.)  Cave's characterization of the evidence as "unilateral" does not refute that Saxon's individual interactions with borrowers is evidence of individual issues precluding his ability to show predominance.  Under the holding of In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008), we were required to "resolve factual disputes by a preponderance of the evidence and make findings that each Rule 23 requirement is met or is not met, having considered all relevant evidence and arguments presented by the parties."  Cave's characterization of the evidence is insufficient to show our finding was manifestly erroneous.

**IV.     THE TYPICALITY AND ADEQUACY ISSUE**

Cave also seeks reconsideration of our decision that he was not typical of the class he
sought to represent.  We found that Cave failed the typicality and adequacy tests because he was
likely subject to a defense that was inapplicable to many class members and that would likely
become a major focus of the litigation, namely, whether the oral financial information he
provided to Saxon to get his TPP was accurate.  He thus arguably never personally satisfied the
condition precedent that his submitted financial information remain true and correct during the
trial period, which made him atypical of the <u>Cave II</u> Class.  (Class Cert. Opinion at 36-37.)  In
the instant Motion, Cave incorporates his arguments regarding error on the predominance issue
by asserting that (1) the ability to satisfy the conditions precedent is irrelevant and (2) we erred
in finding that he was atypical and inadequate since, like the other members of the class, he
received a countersigned TPP, made his trial payments, and did not receive a permanent
modification.

Because we find that Cave is not entitled to reconsideration on his predominance
arguments, we did not err in concluding that he could not demonstrate typicality and adequacy.
Part of the predominance inquiry was to determine what the class had to prove at trial to prevail
on its breach of contract claim.  The evidence of Cave's inaccurate financial information
establishes that he could not personally prevail on his claim even if other class members could
demonstrate the "submit accurate financial information" element with proof that is common to
the class.

The balance of Cave's reconsideration arguments on typicality and adequacy focus on the
disputed evidence regarding his financial information.  He asserts that he "believed" at the start
of the process that he would qualify if Saxon considered his wife's income, and he denies that he

overstated his income.  (Pl. Mem. at 19.)  We addressed the issue of his wife's income in the

Class Cert. Opinion by (1) noting that he made the request that her income be considered on

March 15, 2010, after Saxon informed him that he did not qualify for HAMP because his own

income was insufficient, and (2) finding that his wife was not a borrower on the Mortgage and

Note and did not regularly contribute to the mortgage payments.  (Class Cert. Opinion at 34

(citing Def. Ex. 34; Lechtzin Decl. Ex. 4 (deposition transcript of Wm. Cave ("Wm. Cave Tr.") at

47:4-7, 54:21-24).)  We also noted that Saxon put on evidence that Cave never submitted his

2009 Form W-2 before the servicing of his loan by Saxon ended, and that Cave did not allege or

prove otherwise.  (Id.)  Cave's Motion for Reconsideration provides no basis to conclude that the

financial information findings were manifestly erroneous.

We reject Cave's assertion that we erred in finding that he misstated his financial

information.  The class certification record shows that although Cave could not recall at his

deposition what income figures he provided to Saxon during in his initial phone contact, Saxon

calculated that these figures were a monthly net income of $2,000 and a monthly gross income of

$2,500 by referring to its own servicing records — which indicated the trial period payment was

set at $775.84 — since the HAMP guidelines required that the trial period payment equal 31% of

a borrower's gross income.  (See Lechtzin Decl. Ex. 21 (Wm. Cave TPP Package) (showing trial

period payment was $775.84/month); Docket Entry 93 (Saxon Ex. 8 (recording income

"calculated for loan" in Saxon's database))[5]; Wm. Cave Tr. at 228:3-230:17 (stating Cave did not

remember what he told Saxon but stating that trial payment was $775.84/month).)  It also put on

evidence that Cave's documents did not show that he had a net monthly income of $2,000.

---

[5] Cave argues that any statement attributed to him in Exhibit 8 is hearsay under Fed. R. Evid. 801(c) and is inadmissible under Rule 802.  He does not, however, address the application of the business record exclusion contained in Rule 803(6)(B).

(Docket Entry 93 (Saxon Ex. 9 (Cave profit and loss statement showing monthly income of $400)).) Since Cave testified that he could not remember the income information he had provided, there was no manifest factual error in our conclusion that Cave's verbal information was as Saxon asserted and that Cave's subsequently submitted documents showed his verbal information was not accurate.

Additionally, any alleged error arising from this finding was harmless. Cave does not contest that, as we stated in the Class Cert. Opinion, the typicality inquiry asks whether the named plaintiff "is subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." (Id. at 32 (citing Marcus v. BMW of No. Am., LLC, 687 F.3d 583, 598-99 (3d Cir. 2012).) Saxon argued that Cave was not typical because his income was insufficient **and** because he failed to submit required documentation. The failure to submit documentation made Cave subject to an individual defense that alone rendered him atypical and thus unable to show that our typicality conclusion was manifestly erroneous.

## V.    CONCLUSION

The Motion for Reconsideration is denied since Plaintiff has not shown that our class certification findings were manifestly erroneous. It was incumbent on Class members to show by common evidence that they could satisfy the two conditions precedent to receive a permanent modification. Nothing in the Motion for Reconsideration demonstrates that they can do that. It was incumbent on Cave to show that his claims were typical of those of the Class. He was unable to prove typicality because Saxon established that he was subject to defenses not generally

applicable to other class members.   Nothing in the Motion for Reconsideration changes this conclusion.

An appropriate Order will be entered.

BY THE COURT:

/s/ John R. Padova
_____
JOHN R. PADOVA, J.